SAMIR DEGER-SEN*
samir.deger-sen@lw.com
WILLIAM M. FRIEDMAN*
william.friedman@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Tel: 202.637.2200
Fax: 202.637.2201

AMANDA BARNETT (SBN 319046)
amanda.barnett@lw.com
JESSIE CAMMACK (SBN 329794)
jessie.cammack@lw.com
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Tel: 213.485.1234
Fax: 213.891.8763

AHILAN ARULANANTHAM
(SBN 237841)
aarulanantham@aclusocal.org
MICHAEL KAUFMAN
(SBN 254575)
mkaufman@aclusocal.org
JESSICA KARP BANSAL
(SBN 277347)
jbansal@aclusocal.org
MICHELLE (MINJU) CHO
(SBN 321939)
mcho@aclusocal.org
ACLU Foundation of Southern
California
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500

Attorneys for Plaintiffs-Petitioners
*Pro hac vice application forthcoming

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

KELVIN HERNANDEZ ROMAN,
BEATRIZ ANDREA FORERO
CHAVEZ, MIGUEL AGUILAR
ESTRADA, on behalf of themselves and
all others similarly situated,

        Petitioners-Plaintiffs,

v.

CHAD F. WOLF, Acting Secretary, U.S.
Department of Homeland Security;
MATTHEW T. ALBENCE, Deputy
Director and Senior Official Performing
the Duties of the Director, U.S.
Immigration and Customs Enforcement;
DAVID MARIN, Director of the Los
Angeles Field Office, Enforcement and
Removal Operations, U.S. Immigration
and Customs Enforcement; and JAMES
JANECKA, Warden, Adelanto ICE
Processing Center,

        Respondents-Defendants.

Case No. 5:20-cv-00768

**ADELANTO COVID**

**PLAINTIFF KELVIN
HERNANDEZ ROMAN'S
MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF MOTION FOR
TEMPORARY RESTRAINING
ORDER**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................ 1

II.     FACTS ............................................................................................... 2

        A.      COVID-19 Poses Grave Risk Of Harm To Plaintiff ............... 2

        B.      Plaintiff Kelvin Hernandez Roman Faces an Imminent
                and Substantial Risk of Contracting COVID-19 in
                Adelanto ................................................................................... 3

        C.      Plaintiff Hernandez Roman ..................................................... 6

III.    LEGAL STANDARD ....................................................................... 7

IV.     ARGUMENT .................................................................................... 8

        A.      Plaintiff is Likely to Succeed on the Merits .......................... 8

                1.      Plaintiff's Continued Detention at Adelanto
                        Violates The Fifth Amendment Right to
                        Reasonable Safety in Government Custody ................. 8

                2.      Defendants' COVID-19 response Subjects Plaintiff
                        to Punitive Conditions in Violation of the Fifth
                        Amendment ................................................................ 10

                3.      The Court Has Authority to Order Plaintiff's
                        Release ...................................................................... 13

        B.      Plaintiff Satisfies the Remaining Factors for a Temporary
                Restraining Order .................................................................. 14

                1.      Exposure to a Lethal Virus Which Lacks Any
                        Vaccine, Treatment, or Cure Constitutes
                        Irreparable Harm ....................................................... 14

                2.      The Public Interest and Balance of Equities Weigh
                        Heavily in Plaintiff's Favor ...................................... 15

V.      CONCLUSION ............................................................................... 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

5

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ............................................................. 7

6

7

*Bell v. Wolfish*,
   441 U.S. 520 (1979) ..................................................................... 10

8

9

*Brown v. Plata*,
   563 U.S. 493 (2011) .................................................................. 9, 13

10

11

*Castillo v. Barr*,
   No. CV 20-00605 TJH, 2020 WL 1502864 (C.D. Cal. Mar. 27,
   2020) ..................................................................................*passim*

12

13

*DeGidio v. Pung*,
   920 F.2d 525 (8th Cir. 1990) ............................................................ 9

14

15

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
   489 U.S. 189 (1989) ...................................................................... 8

16

17

*Gordon v. Cty. of Orange*,
   888 F.3d 1118 (9th Cir. 2018) ........................................................... 9

18

19

*Helling v. McKinney*,
   509 U.S. 25 (1993) ....................................................................... 9

20

21

*Hernandez v. City of San Jose*,
   897 F.3d 1125 (9th Cir. 2018) ........................................................... 8

22

23

*Hernandez v. County of Monterey*,
   305 F.R.D. 132 (N.D. Cal. 2015) ........................................................ 9

24

25

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) ....................................................... 14, 15

26

*Hutto v. Finney*,
   437 U.S. 678 (1978) .................................................................. 9, 13

27

28

*Jones v. Blanas*,
   393 F.3d 918 (9th Cir. 2004) ..................................................... 10, 11, 12

*King v. County of Los Angeles*,
    885 F.3d 548 (9th Cir. 2018) ............................................................................ 11

*Lopez v. Heckler*,
    713 F.2d 1432 (9th Cir. 1983) .......................................................................... 15

*M.R. v. Dreyfus*,
    663 F.3d 1100 (9th Cir. 2011), *as amended by* 697 F.3d 706 (9th
    Cir 2012) ........................................................................................................... 14

*Padilla v. U.S. Immigration & Customs Enforcement*,
    No. 19-35565, 2020 WL 1482393 (9th Cir. Mar. 27, 2020) ............................ 14

*Pierce v. Cty. of Orange*,
    526 F.3d 1190 (9th Cir. 2008) .......................................................................... 11

*Pimentel v. Dreyfus*,
    670 F.3d 1096 (9th Cir. 2012) ............................................................................ 7

*Stone v. City & Cty. of San Francisco*,
    968 F.2d 850 (9th Cir. 1992) ............................................................................ 13

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) .............................................................................. 7

*Torres v. U.S. Dep't of Homeland Sec.*,
    411 F. Supp. 3d 1036 (C.D. Cal. 2019) ............................................................ 12

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................ 7

*Youngberg v. Romeo*,
    457 U.S. 307 (1982) ..................................................................................... 8, 10

## OTHER AUTHORITIES

Chris Mooney, Brady Dennis and Sarah Kaplan, *Hundreds of young
    Americans have now been killed by the coronavirus, data shows*,
    Washington Post (Apr. 8, 2020),
    https://www.washingtonpost.com/health/2020/04/08/young-
    people-coronavirus-deaths/ ................................................................................. 2

*Cook County Jail Releases Detainees "Highly Vulnerable" to
     Coronavirus*, NBC Chicago (Mar. 17,2020),
     https://www.nbcchicago.com/news/local/cookcounty-jail-releases-
     detainees-highly-vulnerable-to-coronavirus/2238813/ ..................................... 12

Jo Craven McGinty, *Why Doesn't Flu Tank Economy Like Covid-19?*,
     Wall Street Journal (Apr. 10, 2020),
     https://www.wsj.com/articles/why-doesnt-flu-tank-economy-like-
     covid-19-11586511000............................................................................... 14

Julia Marsh & Ben Feuerherd, *NYC to release 40 coronavirus-prone
     inmates from Rikers as early as today*, New York Post (Mar. 19,
     2020), https://nypost.com/2020/03/19/nyc-to-release-40-
     coronavirusprone- inmates-from-rikers-as-early-as-today/ ............................. 11

Kate Morissey, *Detainees at Otay Mesa Detention Centers were
     offered masks, but only if they signed contracts*, San Diego Tribune
     (Apr. 10, 2020)*,
     https://www.sandiegouniontribune.com/news/immigration/story/20
     20-04-10/otay-mesa-detention-center-gets-masks-but-asks-
     detainees-to-sign-contract-first.......................................................................... 4

Letter from Drs. Scott A. Allen & Josiah Rich to Rep. Bennie
     Thompson, et al. (Mar. 19, 2020), available at
     https://www.documentcloud.org/documents/6816336-032020-
     Letter-From-Drs-Allen-Rich-to-Congress-
     Re.html#document/p4/a557238; ........................................................................ 3

Letter from Mike McGrath, Chief Just., Sup. Ct. of Mont., to Mont.
     Dist. Ct. Judges (Mar. 20, 2020),
     https://courts.mt.gov/Portals/189/virus/Ltr%20to%20COLJ%20Jud
     ges%20re%20COVID-19%20032020.pdf?ver=2020-03-20-
     115517-333;................................................................................................... 12

Melissa Davey, *What is a pandemic and does it change the approach
     to coronavirus?*, The Guardian (Mar. 14, 2020),
     https://www.theguardian.com/world/2020/mar/14/what-is-a-
     pandemic-coronavirus-covid-19........................................................................ 2

*Responses to COVID-19 pandemic*, Prison Policy Initiative (Apr. 10,
     2020),
     https://www.prisonpolicy.org/virus/virusresponse.html#releases ...................... 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Ryan Autullo, *Travis County Judges Releasing Inmates to Limit Coronavirus Spread*, Statesman (Mar. 16, 2020, 6:12 PM), https://www.statesman.com/news/20200316/travis-county-judges-releasing-inmates-to-limit-coronavirus-spread .................................................. 12

Ryan Deto & Ollie Gratzinger, *Allegheny County Jail plans to release some medically vulnerable inmates, but advocacy groups say it's not enough*, Pittsburgh City Paper (Mar. 19, 2020), https://www.pghcitypaper.com/pittsburgh/allegheny-county-jail-plans-to-releasesome-medically-vulnerable-inmates-but-advocacy-groups-say-its-notenough/Content?oid=16978582 ........................................... 12

Salvador Hernandez, *Los Angeles is Releasing Inmates Early and Arresting Fewer People Over Fears of the Coronavirus in Jails*, Buzzfeed News (Mar. 16, 2020, 4:39 PM), https://www.buzzfeednews.com/article/salvadorhernandez/los-angelescoronavirus- inmates-early-release.......................................... 11

*San Diego & Sheriff to Release Inmates to Reduce Vulnerable Jail Population*, CBS News 8 (Mar. 21, 2020, 11:33 AM), https://www.cbs8.com/article/news/health/coronavirus/san-diego-da-sheriff-to-release-inmates-to-reduce-vulnerable-jail-population/509-75730ca5-445a-4811-9024-6aeb1d9c2777 .............................. 12

U.S. Immigration and Customs Enforcement, *Confirmed Cases*, ICE Guidance on COVID-19 (last updated Apr. 10, 2020, 5:35 p.m.), https://www.ice.gov/coronavirus............................................................4

*US Jails Begin Releasing Prisoners to Stem COVID-19 Infections*, BBC News (Mar. 19, 2020), https://www.bbc.com/news/world-us-canada-51947802............................................................... 11

## I.     INTRODUCTION

Petitioner-Plaintiff Kelvin Hernandez Roman ("Plaintiff") is a civil detainee in the Adelanto ICE Processing Center ("Adelanto"). Plaintiff is a class representative of the Proposed Class seeking a preliminary injunction. While the motion for preliminary class-wide relief is pending, Plaintiff seeks a temporary restraining order granting his release from Adelanto.

This Court has recognized the gravity of the threat posed by continued detention at Adelanto and held that "[u]nder the Due Process Clause, a civil detainee cannot be subject to the current conditions of confinement at Adelanto." *Castillo v. Barr*, No. CV 20-00605 TJH, 2020 WL 1502864 ("*Castillo* TRO"), at *5 (C.D. Cal. Mar. 27, 2020). Accordingly, the Court has issued temporary restraining orders and released at least two dozen individuals and placed them under appropriate conditions of confinement outside of Adelanto.[1]

---

[1] *See, e.g., Castillo v. Barr* ("*Castillo* TRO"), No. CV 20-00605 TJH (AFMx), 2020 WL 1502864, at *11 (C.D. Cal. Mar. 27, 2020) (ordering two detainees released); TRO and Order to Show Cause at 12, *Fraihat v. Wolf* ("*Fraihat* TRO"), No. ED-CV2000590-TJH (C.D. Cal. Mar. 30, 2020) (ordering a detainee released); TRO and Order to Show Cause at 14, *Hernandez v. Wolf* ("Hernandez TRO"), Case No. EDCV 20-00617 TJH (KSx) (C.D. Cal. Apr. 1, 2020), ECF No. 17; TRO and Order to Show Cause at 2, *Sudney v. Wolf*, Case No. EDCV 20-00626 TJH (SHKx) (C.D. Cal. Apr. 2, 2020), ECF No. 12; TRO and Order to Show Cause at 2, *Munoz v. Wolf*, Case No. EDCV 20-00625 TJH (SHKx) (C.D. Cal. Apr. 2, 2020), ECF No. 14; *Robles Rodriguez v. Wolf*, No. 5:20-CV-00527 (C.D. Cal. Apr. 3, 2020) ECF Nos. 35-39, 42-43 (granting temporary restraining orders on behalf of six Adelanto detainees); TRO and Order to Show Cause at 2, *Perez Cruz v. Barr*, Case No. EDCV 20-00668 TJH (C.D. Cal. Apr. 3, 2020), ECF No. 8; TRO and Order to Show Cause at 2, *Singh v. Barr*, Case No. EDCV 20-00653 TJH (C.D. Cal. Apr. 3, 2020), ECF No. 11; TRO and Order to Show Cause at 2, *Nguyen v. Marin*, Case No. EDCV 20-00646 TJH (C.D. Cal. Apr. 3, 2020), ECF No. 10; TRO and Order to Show Cause at 2, *Bogle v. Barr*, Case No. EDCV 20-00650 TJH (C.D. Cal. Apr. 3, 2020), ECF No. 12; TRO and Order to Show Cause, *Eyere v. Wolf*, Case No. 5:20-cv-00700-TJH-MAA (C.D. Cal. Apr. 9, 2020), ECF No. 17; TRO and Order to Show Cause, *Yanez Montoya v. Wolf*, Case No. 5:20-cv-00713 (TJH) (C.D. Cal. Apr. 10, 2020), ECF No. 11; TRO and Order to Show Cause, *Hernandez Arevalo v. Wolf*, Case No. 5:20-cv-00712 (TJH) (C.D. Cal. Apr. 10, 2020), ECF No. 14; TRO and Order to Show Cause, *Zendejas Lopez v. Wolf*, Case No. 5:20-cv-00702 (TJH) (C.D. Cal. Apr. 8, 2020), ECF No. 12; TRO and Order to Show Cause, *Moreno v. Wolf*, Case No. 5:20-cv-00718 (TJH) (C.D. Cal. Apr. 9, 2020), ECF No. 13.

Plaintiff is similarly situated to these other Adelanto detainees. He also suffers from asthma, making him at particular risk if he contracts COVID-19. The Court should grant Plaintiff's release pending the determination of the class-wide preliminary injunction.

## II.    FACTS[2]

### A. COVID-19 Poses Grave Risk Of Harm To Plaintiff

COVID-19 is a deadly pandemic. In the short time since the first cases emerged in Wuhan, China, late last year, COVID-19 has spread around the globe at breakneck speed. Because humans have never been exposed to this virus, they have not developed any immunities or protective responses, and thus everyone is at risk of infection.[3] In fact, although certain characteristics such as advanced age or underlying health conditions exacerbate the risk of death or serious illness from COVID-19, early CDC data shows nearly 40% of COVID-19 patients hospitalized in the U.S. have been between the ages of 18 and 54. Decl. of Dr. Todd Schneberk in Supp. of Mot. for a Prelim. Inj. ("Schneberk Decl.") ¶¶ 14, 16. In New York, approximately one-third of the patients between the ages of 30 and 39 who died from COVID-19 did not appear to have any risk factors, Schneberk Decl. ¶ 17, and physicians treating COVID-19 have noted the "randomness" with regard to which young people are unable to survive contraction of the illness.[4]

There is no vaccine, antiviral treatment, or cure for COVID-19. The disease is believed to spread through "droplets" that can be transmitted during close

---

[2] Plaintiff incorporates by reference the factual background discussed in the accompanying Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction.

[3] *See* Melissa Davey, *What is a pandemic and does it change the approach to coronavirus?*, The Guardian (Mar. 14, 2020), https://www.theguardian.com/world/2020/mar/14/what-is-a-pandemic-coronavirus-covid-19.

[4] Chris Mooney, Brady Dennis and Sarah Kaplan, *Hundreds of young Americans have now been killed by the coronavirus, data shows*, Washington Post (Apr. 8, 2020), https://www.washingtonpost.com/health/2020/04/08/young-people-coronavirus-deaths/.

interpersonal contact of about six feet. Decl. of Dr. Robert B. Greifinger in Supp. of Mot. for a Prelim. Inj. ("Greifinger Decl.") ¶ 5; Schneberk Decl. ¶¶ 7–8. And evidence shows individuals infected with COVID-19 can transmit it to others even if they have no symptoms. Schneberk Decl. ¶ 9. Because of its highly contagious nature, the only known effective measure to reduce the risk of injury or death from COVID-19 is to prevent people from being infected in the first place. Greifinger Decl. ¶ 4. In the absence of a comprehensive testing regime, "social distancing," or maintaining six feet of separation at all times from other people, is the *only* effective means of stopping the spread of the disease in the long run. Greifinger Decl. ¶ 4; Schneberk Decl. ¶ 39.

## B. Plaintiff Kelvin Hernandez Roman Faces an Imminent and Substantial Risk of Contracting COVID-19 in Adelanto

Dr. Greifinger explains that "[j]ails and detention centers are congregate environments where the risk of infection and infectious spread is extremely high." Greifinger Decl. ¶ 12. At Adelanto, as in other similar environments, there is a heightened risk of infection due to the lack of adequate hygiene and the inability of detainees to practice social distancing. *Id.* ¶¶ 13–15; *see also* Schneberk Decl. ¶ 38 ("Because of the structure and conditions at Adelanto, detainees face a dramatically reduced ability to protect themselves by social distancing than they would in the community, and therefore face a significantly higher risk of being exposed to and infected by contagious diseases like COVID-19."). Defendants' own medical subject matter experts have recognized that conditions like those present currently at Adelanto amount to a "tinderbox scenario" for the rapid spread of COVID-19. *See* Letter from Drs. Scott A. Allen & Josiah Rich to Rep. Bennie Thompson, et al. (Mar. 19, 2020), available at https://www.documentcloud.org/documents/6816336-032020-Letter-From-Drs-Allen-Rich-to-Congress-Re.html#document/p4/a557238; *see also* Schneberk Decl. ¶¶ 23–35; Greifinger Decl. ¶¶ 12–18.

Similar conditions have led to disastrous results in other congregate facilities.

In three weeks across March and April, the jail at Rikers Island in New York jumped from no cases among inmates to 273 cases, a higher rate of infection than in the most infected places in the world; four corrections staff members and one inmate have died. Suppl. Greifinger Decl. ¶ 13. The Cook County Jail has likewise seen an alarming rise in cases: the Jail went from two confirmed inmate cases on March 23, 2020, to 234 confirmed inmate cases on April 7, 2020; one inmate has died. *Id* ¶ 14. As of April 13, 2020, there were at least 72 confirmed cases among detainees in ICE custody, including twelve at the Otay Mesa Detention Center in San Diego.[5] According to detainees and their lawyers, officials at Otay Mesa initially refused to give masks to detainees unless they signed a waiver releasing the prison contractor from liability.[6]

Dr. Greifinger details the numerous ways in which ICE's response to the significant challenge of dealing with a pandemic in a detention setting has been "wholly inadequate." Greifinger Decl. ¶¶ 17–24. The descriptions of other class members and individuals recently released from Adelanto confirm ICE's utter failure to protect those who are detained there. Despite the crowded, communal facilities, detainees have no access to masks. *See* Decl. of Paola Rayon Vite in Supp. of Mot. for a Prelim. Inj. ("Rayon Vite Decl.") ¶ 13; Decl. of Luis Lopez Salgado in Supp. of Mot. for a Prelim. Inj. ("Lopez Salgado Decl.") ¶¶ 20, 21; Decl. of Charleston Edward Dacoff in Supp. of Mot. for a Prelim. Inj.  ("Dacoff Decl.") ¶¶ 28, 29; Decl. of Ruth Calvillo in Supp. of Mot. for a Prelim. Inj. ("Calvillo Decl.") ¶¶ 20, 22.[7]  Guards and medical staff generally do not wear masks, though they

---

[5] U.S. Immigration and Customs Enforcement, *Confirmed Cases*, ICE Guidance on COVID-19 (last updated Apr. 13, 2020, 11:43 a.m.), https://www.ice.gov/coronavirus (click on "Confirmed Cases").

[6] Kate Morissey, *Detainees at Otay Mesa Detention Centers were offered masks, but only if they signed contracts*, San Diego Tribune (Apr. 10, 2020), https://www.sandiegouniontribune.com/news/immigration/story/2020-04-10/otay-mesa-detention-center-gets-masks-but-asks-detainees-to-sign-contract-first.

[7] ICE has placed severe restrictions on attorneys' ability to access their clients at Adelanto, including limitations on in-person visits unless attorneys bring their own

frequently stand in close proximity to detained individuals. *See* Calvillo Decl. ¶¶ 13, 20–21; Lopez Salgado Decl. ¶ 19; Rayon Vite Decl. ¶ 13; *see also* Schneberk Decl. ¶ 29. Staff arrive and leave on a shift basis, and new detainees continue to arrive at the facility, but there is no attempt to test staff or detainees for asymptomatic infection. Schneberk Decl. ¶ 29; Greifinger Decl. ¶ 22; Dacoff Decl. ¶ 32; *see also* Valdez Decl. ¶ 14. Even detainees who are experiencing symptoms of COVID-19, such as fever and cough, are not tested. Declaration of Jose Hernandez Velasquez ("Hernandez Velasquez Decl.") ¶ 18; *accord* Rayon Vite Decl. ¶¶ 18–19; Dacoff Decl. ¶ 32.

Plaintiff's experience has been no different. Plaintiff has not been able to practice social distancing because there is not enough space in his cell. Decl. of Lesly Gaona ("Gaona Decl.") ¶ 15. Moreover, all detainees, including Plaintiff, share toilets, sinks, and showers with others in their dormitories and pods, without disinfection after each use. Schneberk Decl. ¶ 28; Rayon Vite Decl. ¶¶ 9–11; Lopez Salgado Decl. ¶¶ 11–14; Dacoff Decl. ¶¶ 8–13; Robles Rodriguez Decl. ¶¶ 9–11. Showers are typically crowded with people and placed so closely together that, when standing in one shower stall, "you could reach out your hand and press the button for the shower adjacent to yours." Dacoff Decl. ¶¶ 14; 18. Again, in the opinions of Plaintiffs' medical experts, it is not possible "to achieve adequate social distancing

---

personal protective equipment, which is obviously in very short supply. *See* Motion for TRO at 10-17, *Torres v. Nielsen*, Case No. 18-cv-02602 (C.D. Cal), Dkt. No. 127-1 (describing current limitations on attorney-client communication at Adelanto and seeking emergency relief to ensure detainees maintain basic access to counsel during the COVID-19 pandemic); Decl. of Gabriel Valdez ("Valdez Decl.") ¶ 26, *Robles Rodriguez v. Wolf*, Case No. 5:20-cv-00627-TJH-GJS (C.D. Cal. Apr. 7, 2020), ECF No. 45-1. In addition, ICE currently provides no effective way for attorneys to conduct confidential calls with clients detained at Adelanto. *See* Mot. for TRO at 10-17, *Torres v. Nielson*, Case No. 18-cv-02602 (C.D. Cal. Mar. 26, 2020), ECF No. 127-1. A temporary restraining order requiring that the government take steps to improve access to counsel at Adelanto was granted on April 11, 2020. *Torres v. Nielson*, Case No. 18-cv-02602 (C.D. Cal. Apr. 11, 2020), ECF No. 144. As a result, and because of the urgency of the situation, in lieu of declarations from Plaintiffs-Petitioners themselves, the attorneys representing Plaintiff-Petitioners in their administrative removal proceedings have provided declarations describing the facts of their cases.

and hygiene in communal bathroom[s]" unless "people [are] at least six feet apart at all times" and the "facilities [are] thoroughly disinfected after each use"—which is impossible if 72 people are confined to single shower area. Schneberk Decl. ¶ 28; *see also* Greifinger Decl. ¶ 26.

Absent Court intervention, Plaintiff will not be able to practice social distancing while detained in Adelanto. The Government has expressed in numerous filings before this Court that it has no intention of engaging in meaningful social distancing at Adelanto, dismissing such practices as "idealized safety precaution[s].["8] ICE's practice and attitude is an aberration. Multiple jurisdictions, including Los Angeles, CA, Chicago, IL, Harris County, TX, New York City, and the entire states of New Jersey and Iowa have released thousands of people from *criminal* custody, acknowledging the grave threat that an outbreak in jails and detention centers poses.[9] Other public officials have likewise called for the release of eligible individuals from detention. For example, the former Acting Director of ICE, John Sandweg, has advocated releasing individuals to combat the spread of COVID-19 in detention centers, and has stated "ICE has the operational capacity to quickly and drastically reduce the population of civil immigration detainees." Motion for TRO Ex. 19, Sandweg Decl. ¶ 9, *Thompson v. Tsoukaris*, Case No. 1:20-cv-01449-SDG (N.D. Ga. Apr. 3, 2020), ECF No. 4-20.

**C. Plaintiff Hernandez Roman**

Kelvin Hernandez Roman is a 31-year old citizen of El Salvador. Decl. of Erika Roman in Supp. of Mot. for a Prelim. Inj. ("Roman Decl.") ¶ 8. He has been detained in Adelanto since July 2019. *Id.* ¶ 6. Mr. Roman has been diagnosed with asthma and prescribed an inhaler. Gaona Decl. ¶ 12. Approximately four times a year he has a severe asthma attack, requiring trips to the emergency room. *Id.* ¶ 12.

---

[8] Reply to Order to Show Cause ("*Robles Rodriguez* Gov't Reply") at 12, *Robles Rodriguez v. Wolf*, No. 5:20-cv-00627-TJH (C.D. Cal. Apr. 8, 2020), ECF No. 45.

[9] *See Responses to COVID-19 pandemic*, Prison Policy Initiative (Apr. 10, 2020), https://www.prisonpolicy.org/virus/virusresponse.html#releases (collecting instances where jails and prisons have released detainees due to COVID-19).

He has had trouble getting treatment for his asthma at Adelanto. *Id.* ¶ 13. Recently, when he woke in the night with trouble breathing, officers refused to take him to a doctor until the next morning. *Id.* When his inhaler ran out it took about 4-5 days to get a new one. *Id*. ¶ 14. If Mr. Roman is released, he will live with his U.S. citizen wife and three young children. *Id.* ¶ 16. He will be able to self-quarantine for 14 days in a separate room, using a separate bathroom. *Id.*

Mr. Hernandez Roman's criminal history consists of two 2016 convictions for false imprisonment and misdemeanor child endangerment. Roman Decl. ¶ 11. Mr. Hernandez Roman's wife explains that the convictions arose from an incident in which, following an argument between herself and her husband, he drove her car one block while their daughter and her friend were inside, then parked and immediately brought their daughter and the car keys back to her. Gaona Decl. ¶¶ 3-8. Mr. Hernandez Roman did not hurt or threaten anyone during the incident, for which he served eight days in jail. *Id*. He has since completed 25 parenting classes and is committed to being a good, responsible father to his children. Roman Decl. ¶ 13, Exh. B.

## III.   LEGAL STANDARD

Plaintiffs are entitled to a temporary restraining order if they show: (1) a likelihood of success on the merits; (2) they are likely to suffer irreparable harm in the absence of relief; (3) the balance of equities tips in their favor; and, (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical"). The Ninth Circuit employs a sliding scale approach, in which a stronger showing of one element may offset a weaker showing of another. *See Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). Thus, a temporary restraining order may issue where "serious questions going to the merits [are] raised and the balance of hardships tips sharply in [plaintiffs'] favor."

1  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation

2  omitted) (alteration in original). To succeed under the "serious question" test,

3  plaintiffs must show that they are likely to suffer irreparable injury and that an

4  injunction is in the public's interest. *Id.* at 1132.

5  **IV.  ARGUMENT**

6  In multiple orders over the past two weeks, this Court has recognized that

7  "[u]nder the Due Process Clause, a civil detainee cannot be subject to the current

8  conditions of confinement at Adelanto."  *Castillo* TRO, at *5. Those conditions

9  include "sleeping rooms housing four or six detainees with shared sinks, toilets and

10  showers," potentially infected guards who "regularly rotate through the various

11  holding areas several times a day" without always donning protective equipment,

12  and "meal times" where detainees "line up together, sometimes only inches apart, in

13  the cafeteria." *Castillo* TRO at *2, *see also Fraihat* TRO at 4–5.

14  The conditions within Adelanto are fundamentally unchanged. Plaintiff here

15  is in even greater danger today than the detainees this Court has already released

16  because the spread of COVID-19 in the area—where facility staff commute from

17  daily—has dramatically increased in recent days. Plaintiff is entitled to—and

18  desperately requires—relief for the same reasons as the individuals this Court has

19  already released. The TRO should be granted.

20  **A.    Plaintiff is Likely to Succeed on the Merits**

21  **1.    Plaintiff's Continued Detention at Adelanto Violates The**
22  **Fifth Amendment Right to Reasonable Safety in**
     **Government Custody**

23  Individuals confined by the government have a right to health and safety. *See*

24  *Youngberg v. Romeo*, 457 U.S. 307, 315–16 (1982). "The rationale for this principle

25  is simple enough: when the State by the affirmative exercise of its power so restrains

26  an individual's liberty that it renders him unable to care for himself, and at the same

27  time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical

28  care, and reasonable safety—it transgresses the substantive limits on state action set

by the Eighth Amendment and the Due Process Clause." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).

Thus, a plaintiff establishes "a due process violation" if the Government "affirmatively placed them in danger," and "acted with deliberate indifference to a known or obvious danger in subjecting them to that danger." *Hernandez v. City of San Jose*, 897 F.3d 1125, 1137 (9th Cir. 2018). A plaintiff need not show that the relevant government officials are "subjectively aware that their [actions are] unreasonable," only that "a reasonable official in the circumstances would have appreciated the high degree of risk involved." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). This standard requires "something akin to reckless disregard." *Id*. In systemic cases, such as this, deliberate indifference can be shown by evidence of "systematic or gross deficiencies in staffing, facilities, equipment, or procedures." *Hernandez v. County of Monterey*, 305 F.R.D. 132, 152–53, 155 n. 138 (N.D. Cal. 2015). The key question in such cases is whether systemic deficiencies "taken as whole" subject people to a "substantial risk of serious harm." *See Brown v. Plata*, 563 U.S. 493, 505 n.3 (2011).

Furthermore, it is well-settled that a detainee's constitutional protections extend to "future harm," including a "condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Constitutional violations therefore can arise from "the exposure of inmates to a serious, communicable disease" even if "the complaining inmate shows no serious current symptoms" and "even though the possible infection might not affect all those exposed." *Id.*; *see also Castillo* TRO, at *4; *Hutto v. Finney*, 437 U.S. 678, 682–83, 687 (1978) (risk of exposing inmates to communicable diseases such as hepatitis and venereal disease violates the Eighth Amendment); *DeGidio v. Pung*, 920 F.2d 525, 526, 533 (8th Cir. 1990) (inadequate screening and control procedures in response to tuberculosis outbreak violated the Eighth Amendment).

Here, as this Court has already recognized, COVID-19 poses a substantial risk of serious harm to Plaintiffs, and Defendants' response to that imminent risk constitutes reckless disregard for their safety. As this Court explained in its *Castillo* TRO order, "[t]he law is clear":

> [T]he Government cannot put a civil detainee into a dangerous situation, especially where that dangerous situation was created by the Government. The Due Process Clause of the Fifth Amendment prohibits the Government from exposing an individual to a danger which he would not have otherwise faced. A civil detainee's constitutional rights are violated if a condition of his confinement places him at substantial risk of suffering serious harm, such as the harm caused by a pandemic.

*Castillo* TRO, at *6 (internal citations omitted). After carefully surveying the conditions at Adelanto, this Court held that "[u]nder the Due Process Clause, a civil detainee cannot be subject to the current conditions of confinement at [the facility]." *Id.* at *5. Relying on this holding, this Court has subsequently granted release to more than two dozen additional detained individuals—recognizing the *continuing* inadequacy of the conditions of confinement at Adelanto.

In its TRO orders, this Court noted at least four specific conditions that made detainees at Adelanto vulnerable to COVID-19: (1) detainees were not kept "at least 6 feet apart from others at all times"; (2) they lived in "sleeping rooms housing four or six detainees with shared sinks, toilets and showers"; (3) they had "meal times" where they "line[d] up together, sometimes only inches apart, in the cafeteria"; and (4) they were forced to interact with potentially infected guards who "regularly rotate through the various holding areas several times a day" without protective equipment. *Castillo* TRO, at *2; *Fraihat* TRO at *11, *4–5. *None* of these conditions have been remedied, and Plaintiff is still subject to them. Plaintiff's continued detention is necessarily unlawful.

### 2.  Defendants' COVID-19 Response Subjects Plaintiff to Punitive Conditions in Violation of the Fifth Amendment

1        The conditions of Plaintiff's detention during the COVID-19 pandemic also

2    constitute impermissible punishment in violation of the Fifth Amendment's Due

3    Process Clause. Plaintiff is a civil detainee, and as such is entitled to "more

4    considerate treatment" and may not be subjected to punitive conditions. *See Jones*

5    *v. Blanas*, 393 F.3d 918, 931 (9th Cir. 2004) (citing *Youngberg v. Romeo*, 457 U.S.

6    307, 321–22 (1982)); *cf. Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979) (holding that

7    pretrial detainees may be held in custody "so long as those conditions and

8    restrictions [of confinement] do not amount to punishment").

9        To establish a violation of the Fifth Amendment under this doctrine, plaintiffs

10   need not show that Respondents intended to subject them to punishment. *See Pierce*

11   *v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008). Rather, a rebuttable

12   presumption of punitiveness arises in two circumstances: (1) "where the individual

13   is detained under conditions identical to, similar to, or more restrictive than those

14   under which pretrial criminal detainees are held," *Jones*, 393 F.3d at 934, or (2)

15   where those conditions "are employed to achieve objectives that could be

16   accomplished in so many alternative and less harsh methods," *id.* at 932. If plaintiffs

17   establish one of these presumptions, "the burden shifts to the defendant to show (1)

18   legitimate, non-punitive interests justifying the conditions of [the detained person's]

19   confinement and (2) that the restrictions imposed . . . [are] not excessive in relation

20   to these interests." *King v. County of Los Angeles*, 885 F.3d 548, 557 (9th Cir. 2018)

21   (internal quotation marks omitted).

22        Here, Plaintiff is likely to establish that Defendants violated—and continue to

23   violate—Plaintiff's constitutional rights. First, by systemically failing to implement

24   the only known effective practice to reduce the risk of contracting COVID-19—

25   effective social distancing—Defendants subjects Plaintiff to conditions that are

26   "more restrictive than those under which pretrial criminal detainees are held." *See*

27   *Jones*, 393 F.3d at 934. Indeed, throughout the country, jails and prisons have

28

released hundreds of *criminal* detainees for this reason.[10] In sharp contrast, the limited measures in place at Adelanto all but assure a COVID-19 outbreak will one day occur, and ICE has not sought to release *any* detainees at Adelanto based on the threat of COVID-19 transmission.

Second, Plaintiff also satisfies *Jones*'s alternative test for establishing unconstitutionally punitive conditions, because the "restrictions [imposed during the COVID-19 outbreak] are 'employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.'" *See Torres v. U.S. Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1065 (C.D. Cal. 2019) (quoting *Jones*, 393 F.3d at 932). As this Court explained in *Castillo,* "[t]he risk that" those released from Adelanto "will flee, given the current global pandemic, is very low,

---

[10] *See, e.g.*, *US Jails Begin Releasing Prisoners to Stem COVID-19 Infections*, BBC News (Mar. 19, 2020), https://www.bbc.com/news/world-us-canada-51947802; Salvador Hernandez, *Los Angeles is Releasing Inmates Early and Arresting Fewer People Over Fears of the Coronavirus in Jails*, Buzzfeed News (Mar. 16, 2020, 4:39 PM), https://www.buzzfeednews.com/article/salvadorhernandez/los-angelescoronavirus-inmates-early-release; Julia Marsh & Ben Feuerherd, *NYC to release 40 coronavirus-prone inmates from Rikers as early as today*, New York Post (Mar. 19, 2020), https://nypost.com/2020/03/19/nyc-to-release-40-coronavirusprone-inmates-from-rikers-as-early-as-today/; Ryan Autullo, *Travis County Judges Releasing Inmates to Limit Coronavirus Spread*, Statesman (Mar. 16, 2020, 6:12 PM), https://www.statesman.com/news/20200316/travis-county-judges-releasing-inmates-to-limit-coronavirus-spread; *San Diego & Sheriff to Release Inmates to Reduce Vulnerable Jail Population*, CBS News 8 (Mar. 21, 2020, 11:33 AM), https://www.cbs8.com/article/news/health/coronavirus/san-diego-da-sheriff-to-release-inmates-to-reduce-vulnerable-jail-population/509-75730ca5-445a-4811-9024-6aeb1d9c2777; Letter from Mike McGrath, Chief Just., Sup. Ct. of Mont., to Mont. Dist. Ct. Judges (Mar. 20, 2020), https://courts.mt.gov/Portals/189/virus/Ltr%20to%20COLJ%20Judges%20re%20COVID-19%20032020.pdf?ver=2020-03-20-115517-333; Ryan Deto & Ollie Gratzinger, *Allegheny County Jail plans to release some medically vulnerable inmates, but advocacy groups say it's not enough*, Pittsburgh City Paper (Mar. 19, 2020), https://www.pghcitypaper.com/pittsburgh/allegheny-county-jail-plans-to-releasesome-medically-vulnerable-inmates-but-advocacy-groups-say-its-notenough/Content?oid=16978582; *Cook County Jail Releases Detainees "Highly Vulnerable" to Coronavirus*, NBC Chicago (Mar. 17,2020), https://www.nbcchicago.com/news/local/cookcounty-jail-releases-detainees-highly-vulnerable-to-coronavirus/2238813/.

and reasonable conditions can be fashioned to ensure their future appearance at deportation proceedings." *Castillo*, 2020 WL 1502854, at *5.

ICE has a range of highly effective tools at its disposal to ensure that individuals report for court hearings and other appointments, including conditions of supervision. *See Thaker v. Doll*, Case No. 20-cv-00480, *20–*21 (M.D. Pa. Mar. 31, 2020) (noting "that ICE has a plethora of means *other than* physical detention at their disposal by which they may monitor civil detainees and ensure that they are present at removal proceedings, including remote monitoring and remote check-ins"); Decl. of Andrew Lorenzen-Strait in Supp. of Mot. for TRO ¶ 15, *Robles Rodriguez v. Wolf*, Case No. 5:20-cv-627-TJH-GJS (C.D. Cal. Mar. 30, 2020), ECF No. 22 (noting that a "government-contracted evaluation of [ICE's Intensive Supervision Appearance Program[11]] reported a 99% attendance rate at all immigration court hearings and a 95% attendance rate at final hearings"). For example, ICE's conditional supervision program, called ISAP (Intensive Supervision Appearance Program), "relies on the use of electronic ankle monitors, biometric voice recognition software, unannounced home visits, employer verification, and in-person reporting to supervise participants to ensure supervision." *Id.* at 19. That program is so effective that a "government-contracted evaluation of this program reported a 99% attendance rate at all immigration court hearings." *Id.* Under the circumstances, there is no reasonable basis to continue Plaintiff's confinement during the height of the pandemic.

### 3.    The Court Has Authority to Order Plaintiff's Release

---

[11] The Intensive Supervision Appearance Program, or ISAP, "relies on the use of electronic ankle monitors, biometric voice recognition software, unannounced home visits, employer verification, and in-person reporting to supervise participants." Decl. of Andrew Lorenzen-Strait in Supp. of Mot. for TRO ¶ 15, *Robles Rodriguez v. Wolf*, Case No. 5:20-cv-627-TJH-GJS (C.D. Cal. Mar. 30, 2020), ECF No. 22.

As this Court recognized in *Castillo,* Plaintiffs' immediate release is within this Court's power. "Federal courts possess whatever powers are necessary to remedy constitutional violations because they are charged with protecting these rights." *Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992). As a result, "[w]hen necessary to ensure compliance with a constitutional mandate, courts may enter orders placing limits on a prison's population." *Brown v. Plata*, 563 U.S. 493, 511 (2011). This falls within the Court's broad power to fashion equitable remedies to address constitutional violations in government confinement. *Hutto*, 437 U.S. at 687 n.9.  Moreover, as this Court has explained, "[t]he risk that [Plaintiffs], here, will flee, given the current global pandemic, is very low, and reasonable conditions can be fashioned to ensure their future appearance at deportation proceedings." *Castillo* TRO, at \*5. It will be safer for everyone – Plaintiff, Adelanto detainees and staff, and the surrounding community – if Plaintiff is released.

### B. Plaintiff Satisfies the Remaining Factors for a Temporary Restraining Order

#### 1. Exposure to a Lethal Virus Which Lacks Any Vaccine, Treatment, or Cure Constitutes Irreparable Harm

As this Court explained in *Castillo* and *Fraihat*, "[i]t is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Castillo* TRO, at \*6 (citing *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017)), *Fraihat* TRO at \*11 (citing same). That alone satisfies this factor.

Moreover, the Ninth Circuit recently recognized that dangerous and unsafe conditions of detention, such as those Plaintiff faces, also constitute irreparable harm supporting injunctive relief. *Padilla v. U.S. Immigration & Customs Enforcement*, No. 19-35565, 2020 WL 1482393, at \*9 (9th Cir. Mar. 27, 2020) (recognizing that "substandard physical conditions, [and] low standards of medical care" in immigration detention constitute irreparable harm justifying injunctive relief). And the Ninth Circuit has also recognized that there is irreparable harm where

14

government actions threaten to worsen an individual's health. *See M.R. v. Dreyfus*, 663 F.3d 1100, 1111 (9th Cir. 2011), *as amended by* 697 F.3d 706 (9th Cir 2012). Each of these reasons supports immediate relief here. The fatality rate for people infected with COVID-19 is estimated to be more than thirty times higher than the seasonal flu.[12] For those who survive, infection can permanently damage the lungs and other major organs. Schneberk Decl. ¶ 22. Once COVID-19 is introduced into a congregate environment like a detention center, it spreads "like wildfire." Greifinger Decl. ¶ 13; Schneberk Decl. ¶ 42. And the risk is getting closer. Experts have concluded that "[e]ach day we wait to act increases the danger of serious illness or death due to COVID-19 for not only detainees and staff at Adelanto, but for millions of Southern Californians." Schneberk Decl. ¶ 43; *see* Greifinger Decl. ¶¶ 19, 23. There is no serious dispute the irreparable harm factor is satisfied.

### 2. The Public Interest and Balance of Equities Weigh Heavily in Plaintiff's Favor

Here, as in the cases where this Court has already granted relief, "[t]he balance of the equities tip sharply in favor" of Plaintiff. *Castillo* TRO, at *6, *Fraihat* TRO at *11. While plaintiffs "face irreparable harm to their constitutional rights and health," "there is no harm to the Government when a court prevents the Government from engaging in unlawful practices." *Castillo* TRO, at *6, *Fraihat* TRO at *11. Indeed, "[f]aced with . . . preventable human suffering, [the Ninth Circuit] ha[s] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

Moreover, it is in both the *Defendants*' and the broader public interest to reduce the threat of an imminent COVID-19 outbreak at Adelanto. ICE has an interest in preventing any potential spread of COVID-19 in its detention facility,

---

[12] Jo Craven McGinty, *Why Doesn't Flu Tank Economy Like Covid-19?*, Wall Street Journal (Apr. 10, 2020), https://www.wsj.com/articles/why-doesnt-flu-tank-economy-like-covid-19-11586511000.

which may then affect guards, visitors, attorneys, and others who may potentially interact with detainees. And an outbreak of COVID-19 at Adelanto would doubtless put significant pressure on or exceed the capacity of local health infrastructure. Greifinger Decl. ¶ 14; *see* Schneberk Decl. ¶ 26. As this Court succinctly explained:

> The public has a critical interest in preventing the further spread of the coronavirus. An outbreak at Adelanto would, further, endanger all of us – Adelanto detainees, Adelanto employees, residents of San Bernardino County, residents of the State of California, and our nation as a whole.

*Castillo* TRO, at *6.

Thus, Plaintiff's release would not only impose minimal harm to the government, it would also reduce the healthcare and economic burden on the local community and health infrastructure at large.

## V.    CONCLUSION

The Court should grant Plaintiff's motion for a temporary restraining and direct Plaintiffs' immediate release from Adelanto.


Dated: April 13, 2020                              Respectfully submitted,


                                                   LATHAM & WATKINS LLP


                                                    */s/ Amanda Barnett*
                                                   AMANDA BARNETT
                                                   Counsel for Plaintiffs