SAMIR DEGER-SEN*
samir.deger-sen@lw.com
WILLIAM M. FRIEDMAN*
william.friedman@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Tel: 202.637.2200
Fax: 202.637.2201

AMANDA BARNETT (SBN 319046)
amanda.barnett@lw.com
JESSIE CAMMACK (SBN 329794)
jessie.cammack@lw.com
LATHAM & WATKINS LLP
355 South Grand Avenue, Suite 100
Los Angeles, California 90071-1560
Tel: 213.485.1234
Fax: 213.891.8763

AHILAN ARULANANTHAM
(SBN 237841)
aarulanantham@aclusocal.org
MICHAEL KAUFMAN
(SBN 254575)
mkaufman@aclusocal.org
JESSICA KARP BANSAL
(SBN 277347)
jbansal@aclusocal.org
MICHELLE (MINJU) CHO
(SBN 321939)
mcho@aclusocal.org
ACLU Foundation of Southern California
1313 West 8th Street
Los Angeles, CA 90017
Telephone: (213) 977-9500

Attorneys for Plaintiffs-Petitioners
*Pro hac vice application forthcoming

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KELVIN HERNANDEZ ROMAN, BEATRIZ ANDREA FORERO CHAVEZ, MIGUEL AGUILAR ESTRADA, on behalf of themselves and all others similarly situated,<br><br>Petitioners-Plaintiffs,<br><br>v.<br><br>CHAD F. WOLF, Acting Secretary, U.S. Department of Homeland Security; MATTHEW T. ALBENCE, Deputy Director and Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement; DAVID MARIN, Director of the Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement; and JAMES JANECKA, Warden, Adelanto ICE Processing Center,<br><br>Respondents-Defendants. | Case No. 5:20-cv-00768<br><br>**ADELANTO COVID**<br><br>**DECLARATION OF LESLY GAONA** |

# DECLARATION OF LESLY GAONA

I, LESLY GAONA, hereby declare:

1. I make this declaration based on my own personal knowledge and if called to testify I could and would do so competently as follows:

2. I am married to Plaintiff-Petitioner Kelvin Hernandez Roman. We have been together since 2012 and married since 2016. We have three children together: five-year-old, one-year-old, and a newborn. I am a United States citizen, as are our children.

3. Kelvin's 2016 convictions for false imprisonment and misdemeanor child endangerment arose out of a minor misunderstanding that I believe got blown completely out of proportion.

4. One day in 2016, Kelvin and I had an argument. Afterwards, I took our baby daughter and drove car to a friend's house to stay with her. Kelvin was trying to talk to me all day, but I was upset and didn't want to. Finally, Kelvin told me that he had left a tablet that he used for work in my car and he needed it back. I agreed to meet up with him and give him the tablet.

5. The friend I was staying with, my daughter, and I got in my car and drove to a grocery store to meet Kelvin. I got out of my car to give Kelvin his tablet. Kelvin wanted me to stay and talk to him and not leave right away. After I got out of the car, Kelvin climbed into the driver's seat. He drove the car to a spot less than a block away and parked it so that I would have to stay and talk to him and would not be able to leave right away. When he did this, my friend and our baby daughter were in the car.

6. After Kelvin parked the car, he carried our daughter back to me, and handed me our daughter and my car keys. I thought everything was fine. But by this point, the police had arrived. When they started questioning my friend she started crying and having an anxiety attack. Kelvin had not hurt my friend or tried to stop her from leaving in any way, but she was very upset. The paramedics had to

1

come and calm her down. The next thing I knew, the police had arrested Kelvin and put him in the police car.

7. Kelvin was convicted of false imprisonment because he moved the car with my friend in it against her will. He was convicted of child endangerment because our daughter was in the car at the time, too.

8. Kelvin spent just a few nights in jail in connection with the incident. Very soon after this incident, Kelvin and I reconciled and I moved back into our home with our daughter.

9. Kelvin has been in Adelanto since July 2019. If Kelvin is released, I would welcome him home with open arms. I love him and want to support him. I am so sad that he is in Adelanto right now because I worry about him and our kids miss him. I really miss him, too.

10. I gave birth to our third child, another daughter, in February 2020. Kelvin hasn't even had the chance to meet her yet. I am by myself trying to take care of a 5-year-old, 1-year-old, and newborn without his support. I really wish Kelvin were here with me to help with the kids and be there for them as their dad.

11. In September, the IJ denied Kelvin bond. It was my birthday and I went to immigration court with my kids to show the court that Kelvin had the full support of his family. However, the IJ said he was denying Kelvin's request for bond because Kelvin was supposed to take parenting classes. In fact, Kelvin had already completed 25 parenting skills classes. But the attorney didn't have the documentation showing this at the hearing, and the IJ said he couldn't take Kelvin's word for it.

12. Kelvin has asthma and has been prescribed an inhaler. His asthma is sometimes very serious. Approximately 4 times a year, he has a severe asthma attack and we have had to take him to the emergency room. He regularly runs out of breath and needs to use his inhaler about once a week on average.

13. Kelvin has had trouble getting medical attention at Adelanto when he

needs it. Recently, he woke up in the middle of the night and was having trouble breathing. He asked the officers to see a doctor but they made him wait until the next day.

14. Also recently, his inhaler ran out and he requested a new one. But he couldn't get the officers to take him to the doctor to get a prescription for about 4 to 5 days after his request.

15. I worry so much that Kelvin will get COVID-19 while at Adelanto and that his asthma will cause him to become gravely ill from it. I know that people with asthma are at higher risk of getting very sick or dying from COVID-19. I also know from my conversations with Kelvin that there is very little space in the cells at Adelanto. There is no way to do social distancing. I worry that because the detainees can't practice social distancing, one person will bring COVID-19 into the facility and it will spread everywhere.

16. I wish Kelvin were home with me and the kids, where we are being very careful to practice social distancing, disinfect things often, stay at home except for essential trips, and wash our hands all the time. If Kelvin is released, our family would be able to set up a room for him to self-isolate for 14 days. He would also be able to use a separate sink and toilet from the rest of the family. After 14 days, we would make sure that as a family, we practice social distancing and stay at least 6 feet away from others.

17. When I spoke to Kelvin on the phone today, I confirmed that he understands that, in this case, he represents the interests of all people detained at Adelanto. He has to think about everyone and not just himself. He also has to be sure to give his lawyers any information they need for the case. And he has to stay informed. He agreed to all that. He wants to be a class representative because everyone at Adelanto is worried about COVID-19, and he wants to help everyone, not just people who are lucky enough to have a lawyer willing to fight for them.

3

I declare under penalty of perjury of the laws of the State of California and the United States that the foregoing is true and correct.  Executed this 12th day of April, 2020 in Garden Grove, California.

                                                LESLY GAONA