# United States District Court
# Central District of California
# Western Division

AN THANH NGUYEN,

    Petitioner,

v.

DAVID A. MARIN, *et al.*,

    Respondents.

ED CV 20-0768-TJH
EDCV 20-00646 TJH

**Order**

    The Court has considered Petitioner's emergency *ex parte* application to hold Respondents in contempt, together with the moving and opposing papers.

    On April 3, 2020, the Court issued a temporary restraining order ["TRO"] requiring Respondents to release Petitioner from custody pending further order of the Court. Thereafter, Respondents released Petitioner from its detention. On April 15, 2020, the Court issued an order extending the TRO to May 1, 2020.

    On April 23, 2020, the Court provisionally certified the class and issued a class-wide preliminary injunction in *Roman, et al. v. Wolf, et al.*, CV 20-768 TJH (PVCx). Petitioner is a member of the *Roman* class. The *Roman* preliminary injunction stated that, *inter alia*, "[a]ll class members released by the Court pursuant to a Temporary

Restraining Order, issued in this case or in a separately and previously filed case, shall remain released and subject to the terms and conditions of release set forth in each respective Temporary Restraining Order."

On April 24, 2020, the Court issued a stay order in this case. The stay order stated, *inter alia*, "that, pursuant to the Preliminary Injunction issued in *Roman*, Petitioner shall remain released pending a final resolution of *Roman* or further order of the Court."

Also, on April 24, 2020, Respondents filed their notice of appeal challenging this Court's class certification order, the preliminary injunction, and the related findings and conclusions issued in *Roman*. Respondents did not appeal any of the Court's orders issued in this case.

On April 25, 2020, the Ninth Circuit Court of Appeals issued an administrative stay, temporarily staying the *Roman* preliminary injunction pending further order of the Circuit.

On May 5, 2020, the Circuit stayed, pending appeal, the *Roman* preliminary injunction, with the exception of the mandate for Respondents to comply with the Centers for Disease and Control guidelines. The Circuit, also, ordered the appeal to be expedited. Oral arguments for the *Roman* appeal have been scheduled for September 15, 2020.

On May 18, 2020, the parties, here, filed a joint stipulation to modify the conditions of release imposed by the Court on Petitioner in the TRO. On May 20, 2020, the Court approved the joint stipulation and ordered a modification to the third condition of release set forth in the TRO.

On July 21, 2020, Deportation Officer Mariles called Petitioner and asked him to report to Respondents' Los Angeles Field Office on July 23, 2020, to have his ankle monitor removed.

On July 23, 2020, when Petitioner arrived at the Los Angeles Field Office, he was re-detained, in violation of this Court's orders. Apparently, Respondents intend

to deport Petitioner next week and they detained him in advance of that deportation. Petitioner's counsel immediately filed the instant emergency application. The Court, then, ordered Respondents to file its opposition to the instant application by noon today.

In its opposition, Respondents informed the Court that they have, again, released Petitioner from their detention, but had ordered him to, again, report to the Los Angeles Field Office on Monday, July 27, 2020.

Petitioner filed this application to coerce Respondents to comply with this Court's various orders as they relate to the continued release of Petitioner from Respondents' detention.

The Court "may wield its civil contempt powers for two separate and independent purposes: (1) 'to coerce the defendant into compliance with the court's order'; and (2) 'to compensate the complainant for losses sustained.'" *Shell Offshore, Inc. v. Greenpeace, Inc.*, 815 F. 3d 623, 629 (2016) (citations omitted). The United States Supreme Court, in *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802-1902 (2019), summarized the current state of the law regarding civil contempt:

> … [W]e have said that civil contempt "should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *California Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618, 5 S. Ct. 618, 28 L. Ed. 1106 (1885) (emphasis added). This standard reflects the fact that civil contempt is a "severe remedy," *ibid.*, and that principles of "basic fairness requir[e] that those enjoined receive explicit notice" of "what conduct is outlawed" before being held in civil contempt, *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S. Ct. 713, 38 L. Ed. 2d 661 (1974) (*per curiam*). *See Longshoremen, supra*, at 76, 88 S. Ct. 201 (noting that civil contempt usually is not appropriate unless "those who must obey" an order "will know what the court intends to require and what it means to forbid"); 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2960, pp. 430–431

(2013) (suggesting that civil contempt may be improper if a party's attempt at compliance was "reasonable").

This standard is generally an objective one. We have explained before that a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable. As we said in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 69 S. Ct. 497, 93 L. Ed. 599 (1949), "[t]he absence of wilfulness does not relieve from civil contempt." *Id.*, at 191, 69 S. Ct. 497.

We have not held, however, that subjective intent is always irrelevant. Our cases suggest, for example, that civil contempt sanctions may be warranted when a party acts in bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Thus, in *McComb*, we explained that a party's "record of continuing and persistent violations" and "persistent contumacy" justified placing "the burden of any uncertainty in the decree … on [the] shoulders" of the party who violated the court order. 336 U.S. at 192–193, 69 S. Ct. 497. On the flip side of the coin, a party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction. *Cf. Young v. United States ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 801, 107 S. Ct. 2124, 95 L. Ed. 2d 740 (1987) ("[O]nly the least possible power adequate to the end proposed should be used in contempt cases" (quotation altered)).

In their opposition, Respondents argued that they did not violate any of this Court's orders because the *Roman* preliminary injunction was stayed by the Circuit, and the operative order in this case, the April 24, 2020, stay order, was dependant on the *Roman* preliminary injunction. Normally, civil contempt is not an available

enforcement mechanism for violations of a preliminary injunction after the preliminary injunction has been terminated. *See Shell Offshore*, 815 F. 3d at 630. Here, however, the Circuit did not terminate the *Roman* preliminary injunction – the Circuit merely stayed the *Roman* preliminary injunction pending an expedited appeal.

To clarify the distinction between a stay and a termination of an order, the Court, again, turns to the Supreme Court. In *Nken v. Holder*, 556 U.S. 418, 428-429 (2009), the Court stated that:

> … instead of directing the conduct of a particular actor, a stay [pending appeal] operates upon the judicial proceeding itself. It does so either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability. *See* Black's, supra, at 1413 (6th ed.1990) (defining "stay" as "a suspension of the case or some designated proceedings within it").
>
> A stay pending appeal certainly has some functional overlap with an injunction, particularly a preliminary one. Both can have the practical effect of preventing some action before the legality of that action has been conclusively determined. But a stay achieves this result by temporarily suspending the source of authority to act – the order or judgment in question – not by directing an actor's conduct. **A stay "simply suspend[s] judicial alteration of the status quo,"** while injunctive relief "grants judicial intervention that has been withheld by lower courts." *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313, 107 S. Ct. 682, 93 L. Ed. 2d 692 (1986) (SCALIA, J., in chambers).

(emphasis added).

Thus, the consequence of the Circuit's stay, pending appeal, of the *Roman* preliminary injunction was the maintenance of the *status quo*. The *status quo* as to Petitioner is that he remain released pending a final resolution of *Roman* or further

order of the Court. Since neither has occurred, Respondents' re-detention of Petitioner violated the Court's orders. However, because Respondents have, again, released Petitioner, there is no need, at this time, for the Court to coerce Respondents to comply with its orders. *See Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 827 (1994). Nevertheless, Respondents' actions in re-detaining Petitioner, was, indeed, a violation of the Court's orders. Consequently, Respondents shall pay to Petitioner the legal fees he incurred for the filing of this application. *See Shell Offshore*. If the parties cannot agree, within 30 days, as to amount of the reasonable fees incurred, Petitioner shall file a supplemental declaration regarding fees for the Court's review.

The issue, here, is not whether Respondents may deport Petitioner – indeed, the Court acknowledges that it lacks jurisdiction to prevent Respondents from deporting Petitioner. Rather, the issue is whether Respondents may re-detain Petitioner, or any other Roman class member ordered to be released, without first seeking leave of Court, given the orders that are in place. To that, the answer is clear. They may not.

Accordingly,

It is Ordered that the emergency *ex parte* application for civil contempt be, and hereby is, Granted.

It is further Ordered that Respondents shall pay the reasonable attorney's fees Petitioner incurred for this emergency *ex parte* application.

It is further Ordered that Respondents shall not re-detain any *Roman* class member who has been ordered by this Court to be released without first obtaining a further order from the Court.

It is further Ordered that the Clerk of Court shall file a copy of this order in

*Roman* so that Respondents and their counsel in that case will be well informed that any further violation of the Court's release orders will result in further contempt sanctions.

Date: July 24, 2020

_____
Terry J. Hatter, Jr.
Senior United States District Judge