1
2
3
4
5
6
7
8

# United States District Court
# Central District of California
# Western Division

13  KELVIN HERNANDEZ ROMAN, *et al.*,

14              Petitioners-Plaintiffs,

15      v.

16  CHAD T. WOLF, *et al.*,

17              Respondents-Defendants.

18

ED CV 20-00768 TJH

## Amended Adelanto Population Reduction Order

19

20      The Modified Preliminary Injunction, issued on September 29, 2020, ordered the

21  Government to file a proposed population reduction plan for the Adelanto Immigration

22  and Customs Enforcement Processing Center ["Adelanto"] to identify the target

23  maximum detainee capacity of Adelanto during the COVID-19 pandemic such that all

24  remaining detainees would be able to maintain 6 feet of social distance at all times and

25  all places from each other.  The Modified Preliminary Injunction, also, provided the

26  Petitioners-Plaintiffs with an opportunity to file a responsive brief.  Thereafter, the

27  Court granted the Government's request for leave to file a reply brief.

28      The Court has considered the parties' briefs and the attachments to those briefs,

1   with a combined total of 595 pages.

2

3   **The Court's Need for Accurate and Timely Information**

4   The Government has failed, and continues to fail, to provide timely information

5   to the Court. Namely, the Government was ordered to file, starting on October 13,

6   2020, a Daily Housing and COVID-19 Status Report by 2:00 p.m. The Government

7   has yet to comply. The first daily status report was filed more than 7 hours late on

8   October 13, 2020. The second daily status report was filed almost 2 hours late on

9   October 14, 2020. The Government did not seek leave to file either daily status report

10  late. Nor did the Government even attempt to explain why the first two daily status

11  reports were filed late. The Court expects the ordered reports to be filed on time,

12  unless the Government seeks, and the Court grants, leave ***before*** each day's filing

13  deadline.

14  This case involves human lives whose reasonable safety is entitled to be enforced

15  and protected by the Court pursuant to the United States Constitution.

16  Accordingly, the Court is contemplating the appointment of a Special Master, to

17  be paid by the Government, to ensure that the information the Court receives in this

18  case is both accurate and timely. The Clerk of Court will send out a separate notice of

19  a status conference where the Court will discuss the possible appointment of a Special

20  Master.

21

22  **Exhibits and Attachments**

23  As another preliminary matter, the Court urges all counsel to attach to their

24  briefs, or at least reference in their briefs, all relevant evidence that they want the Court

25  to consider in connection with those briefs, regardless of whether the evidence was

26  previously filed in this case. *See* Local Rules 7-5(b), 7-6 and 7-9. If counsel fails to

27  comply with the Local Rules, they will proceed at their own peril.

28  By way of example, on September 25, 2020, the Government filed a brief,

1    entitled Respondents-Defendants' Response to *Ex Parte* Application for Reconsideration

2    of Order Denying Petitioners-plaintiffs' Motion for Further Temporary Restraining

3    Order and Reconsideration and Response to Supplemental Briefing.  Attached to that

4    brief were, *inter alia*, an 11 page declaration from Gabriel Valdez and 7 substantive

5    pages excerpted from Valdez's 315 page deposition.  In its brief, entitled Brief

6    Regarding Maximum Allowable Population for Social Distancing, filed on October 5,

7    2020, the Government took issue with the fact that the Court, in its Modified

8    Preliminary Injunction, did not take into account the Adelanto measurements Valdez

9    referenced in his separate declaration filed on May 20, 2020, as an attachment to the

10   Government's Answer to the Writ of Habeas Corpus.

11        The Court will put aside, for the moment, that Valdez did not determine the

12   measurements himself, but, rather, the measurements were "transmitted" to him via

13   an unauthenticated email, apparently, from Adelanto's warden, James Janecka.

14   Moreover, the transmitted dimensions lacked a proper foundation.  The transmitted

15   dimensions were not accompanied by a declaration laying a proper foundation.  Further,

16   no foundation was established as to who actually measured the various areas or when

17   those measurements were taken.  Indeed, there was no basis for the Court to accept

18   those dimensions as being accurate.  Further, the Government made no effort to

19   establish that the dimensions were not inadmissible hearsay.

20        The Court is puzzled as to why the Government merely attached the dimensions

21   and its transmittal email to its Brief Regarding Maximum Allowable Population for

22   Social Distancing, without an accompanying declaration which establishes authentication

23   and an adequate foundation.  Indeed, the Government failed to authenticate any of its

24   attachments to that brief.  However, the Government did provide a declaration

25   authenticating the attachments to its Reply in Support of Brief Regarding Maximum

26   Allowable Population for Social Distancing.

27        Just as the Court admonished Class Counsel in connection with the bail

28   applications, the Court, now admonishes the Government's counsel that the Court will

1  not consider evidence for motions, or during trial, that, *inter alia*, lacks authentication,
2  lacks a sufficient foundation, or is otherwise inadmissible.

3      In drafting the Modified Preliminary Injunction, the Court did not consider the
4  Adelanto measurements Valdez set forth in his May 20, 2020, declaration because those
5  measurements were not referenced in the Government's October 5, 2020, brief, nor was
6  that declaration attached to its October 5, 2020, brief.

7      While this case was filed only six months ago, its docket, currently, has more
8  than 685 entries, with some entries containing over 350 pages and as many as 26
9  attachments.  Between May 20, 2020, and the date the Modified Preliminary Injunction
10  was filed, over 500 documents were filed in this case.  "Judges are not like pigs,
11  hunting for truffles buried in briefs, much less buried in disorganized, scattershot
12  evidentiary submissions." *Faulkner v. Wausau Bus. Ins. Co.*, 571 F. App'x. 566, 569
13  (9th Cir. 2014).

14

15  **Proposed Adelanto Population Reduction Plan**

16      The Government informed the Court that, as of October 5, 2020, Adelanto's
17  detainee population is 772.  Adelanto's detainee population has fluctuated up and down
18  over the course of this litigation due to a combination of releases, transfers, and new
19  intakes.  Adelanto is, currently, barred, by the Modified Preliminary Injunction, from
20  receiving any additional detainees.

21      In its brief, the Government proposed two targets for the maximum detainee
22  capacity of Adelanto during the COVID-19 pandemic – a proposed target and an
23  alternative proposed target.  The Government specifically acknowledged that its first
24  proposed target strictly follows the Court's directive.  By inference, then, the alternative
25  proposed target does not strictly follow the Court's directive.

26      As a point of clarification for the benefit of the Government and its counsel, this
27  Court *always* expects the parties, and their counsel, appearing before it to strictly follow
28  all of its orders and directives until such orders and directives are either vacated by this

1  Court or reversed on appeal.

2      Based on its initial brief, it appears to the Court that the Government wants the

3  Court to engage in a modified version of what is commonly referred to as "Baseball

4  Arbitration," where a tribunal is limited to deciding between a high number, usually

5  proposed by the Players, and a low number, usually proposed by the League.  Except,

6  here, the Government has proposed both the high number and the low number.  Given

7  that Petitioners-Plaintiffs concur with the low number, and that we are approaching the

8  Fall Classic, the Court is game to consider only the two maximum capacity targets

9  pitched by the Government.

10      The Government's first proposed maximum capacity target is 475 detainees.

11  With a maximum population of 475 detainees, the Government argued that all of

12  Adelanto's detainees would be able to maintain 6 feet of social distance at all times and

13  at all places from each other.  The Petitioners-Plaintiffs agree with, and support, the

14  Government's assessment based on this maximum capacity target of 475.

15      The Government's alternative proposed maximum capacity target is 1,052

16  detainees.  With a maximum population target of 1,052 detainees, the Government

17  argued that all of Adelanto's detainees would be able to maintain 6 feet of social

18  distance at all times and at all places from each other *"with the exception of the fleeting*

19  *moments."*  The "fleeting moments," according to the Government, are those times

20  "when one detainee must pass by a detainee lying in bed."  Because Adelanto's current

21  detainee population of 772 is less than the alternative target of 1,052, the Government

22  argued that no additional detainees would need to be released if the Court were to

23  accept the Government's alternative maximum capacity target.

24      The Government reached its alternative maximum capacity target by relying on:

25  (1) The July 22, 2020, updated version of the United States Centers for Disease Control

26  and Prevention's ["the CDC"] "Interim Guidance on Management of Coronavirus

27  Disease 2019 (COVID-19) in Correctional and Detention Facilities" and (2) The interim

28  guidance issued on March 15, 2020, by the World Health Organization's ["the WHO"]

1 Regional Office for Europe, entitled "Preparedness, prevention and control of COVID-

2 19 in prisons and other places of detention." The Government relies heavily on the

3 WHO's guidance that detainees need only 1 meter – or approximately 39 inches – of

4 social distancing space.

5     As the parties know, the COVID-19 pandemic, and the outbreak at Adelanto,

6 have been dynamic and constantly evolving. Likewise, the state of the science

7 surrounding the novel coronavirus and the resulting COVID-19 disease has been

8 dynamic and constantly evolving. Accordingly, the Court is concerned that the

9 Government is relying on guidance, particularly for its alternative maximum capacity

10 target of 1,052, from the CDC and the WHO that could be as much as three and seven

11 months, respectively, out of sync with the most current science. The current state of

12 the science of COVID-19 is that it is primarily transmitted by large airborne droplets,

13 and that it can, also, be transmitted by small aerosolized droplets.

14     After considering the Government's reliance on the WHO guidelines, the Court,

15 is compelled to take judicial notice of the United States Department of State's

16 September 3, 2020, press release entitled, "Update on U.S. Withdrawal from the World

17 Health Organization." *See* Fed. R. Evid. 201. In that press release, the State

18 Department relayed the United States' decision to withdraw from the WHO because,

19 *inter alia*, it determined that the WHO was not a credible organization. Yet, here, the

20 Department of Justice is arguing that the Court should accept the WHO's guidelines as

21 credible. The Government's reliance on the WHO, therefore, is disingenuous.

22     Next, the Ninth Circuit Court of Appeals instructed this Court, specifically, to

23 not rely on the CDC's guidelines in connection with a preliminary injunction in this

24 case. *Roman v. Wolf,* __ Fed. Appx. __, 2020 WL 5683233, *6 (9th Cir. 2020). The

25 Circuit concluded, after reviewing the Court's original preliminary injunction provision

26 requiring the Government to comply with CDC guidelines, that the CDC's guidelines'

27 "lack of specificity makes it a poor guidepost for mandatory injunctive relief." *Roman*

28 (citations omitted).

1    Given the current COVID-19 outbreak at Adelanto with its current detainee

2    population of 772, the Court finds that the maximum capacity target that would ensure

3    each detainee's constitutional right to reasonable safety must be a number that is less

4    than – not more than – 772 detainees.  Indeed, the current population level at Adelanto

5    continues to pose an unreasonable risk to each detainee's safety.

6    The current outbreak at Adelanto, further, belies the Government's creation and

7    advancement of a "fleeting moments exception."  This is especially true given that the

8    Government asserted that it cannot adequately enforce – with either encouragement or

9    punishment – the provisions of the Modified Preliminary Injunction that require all

10   detainees to wear masks – except while sleeping, eating, drinking, showering or when

11   they are the sole occupant of a cell with a solid door that is closed – and to maintain a

12   6 foot social distance at all places and at all times between each other.  However, the

13   Court has been presented with specific evidence that Adelanto's staff regularly does not

14   even attempt to encourage mask wearing or social distancing among the detainees by,

15   simply, explaining the benefits and encouraging compliance.  Moreover, given that

16   there are an unknown number of Adelanto staff and detainees who continue to not wear

17   masks, it would not be reasonably safe for the other detainees if the mandatory social

18   distance were reduced to 39 inches or if the Court were to permit a maximum

19   population target based on the intentional disregard of those close contacts that the

20   Government has labeled as "fleeting moments."

21   Finally, the Court is concerned that: (1) Adelanto staff is not adequately

22   educating the class members about the transmission risks of COVID-19 and the disease-

23   containment benefits of wearing masks and maintaining a social distance; (2) Adelanto's

24   staff are not all wearing masks when in housing units, as ordered by the Modified

25   Preliminary Injunction; and (3) Adelanto is not sufficiently isolating or quarantining

26   detainees who are symptomatic of COVID-19, suspected of having COVID-19, or have

27   been confirmed positive for COVID-19.

28   Accordingly, the Court rejects the Government's alternative proposed maximum

1 capacity target of 1,052 detainees, and accepts the Government's first proposed

2 maximum capacity target of 475 detainees.

3       In accordance with the Government's space calculations, each four-person cell

4 at Adelanto shall house no more than one person and each eight-person cell at Adelanto

5 shall house no more than two people.  Housing assignments in open dormitories shall

6 be in accordance with the Modified Preliminary Injunction's mandate that all detainees

7 shall maintain 6 feet of social distance at all times and at all places from each other,

8 which requires that no detainee shall be assigned to a bed that is less than 8 feet from

9 another assigned bed to ensure a 6 foot social distance as detainees get in and out of bed

10 and walk to and from their bed.  Class members are entitled to sufficient space so that

11 they can stand, stretch, walk around, go to the shower, use the toilet and wash their

12 laundry in their cell's sink if they are assigned to a cell.  The Court accepts the

13 representation of all parties that social distancing in the common areas will be achieved

14 based on socially-distanced sleeping assignments.

15       In its brief, the Government stated that it could safely reduce Adelanto's detainee

16 population by 50 detainees per day.  The Court accepts that number as reasonable.

17

18 **Adelanto Population Reduction Order**

19       Starting on October 19, 2020, the Government shall forthwith reduce the detainee

20 population of Adelanto by at least 50 detainees each day by either releasing or deporting

21 Adelanto detainees until the detainee population is at or below 475.

22       The Government may impose reasonable conditions of release, including GPS

23 monitoring, on any class member selected for release.

24       The Government may deport any class member who has final deportation orders,

25 has exhausted all appeals, and is otherwise deportable.

26       The Government shall not transfer detainees for the sole purpose of complying

27 with this Adelanto Population Reduction Order.  Given the current state of the COVID-

28 19 pandemic in communities, penal institutions, and immigration detention centers

across the country, it would not be reasonable or practical for the Court to monitor, at this juncture, transferee facilities to ensure compliance with class members' constitutional rights. Moreover, a class member's transfer to another detention facility could endanger the detainees at the transferee facility if the class member is contagious. Nevertheless, if any class member is transferred to another facility for a reason other than to comply with this Adelanto Population Reduction Order, the Court shall retain jurisdiction over that class member to ensure that his/her right to reasonable safety remains protected.

In determining which Adelanto detainees to release or deport, the Government shall proceed in the following order until the maximum capacity target of 475 detainees, or fewer, is reached:

1. All *Fraihat* subclass members who are not subject to a mandatory detention order, as set forth in Judge Jesus Bernal's order, granting in part and denying in part, Plaintiffs' Motion to Enforce the April 20, 2020, Preliminary Injunction in *Fraihat v. ICE*, CV 19-01546 JGB, ECF No. 240 (Oct. 7, 2020);

2. All detainees who are over the age of 55 years old or have one or more pre-existing conditions recognized by the CDC as putting them at high risk for COVID-19 complications but are not *Fraihat* subclass members and who are not subject to a mandatory detention order, do not have any outstanding arrest warrants, and do not have any pending felony criminal charges;

3. All detainees who do not have any felony criminal convictions, do not have any outstanding arrest warrants and do not have any pending felony criminal charges; then

4. All detainees who do not have any outstanding arrest warrants and do not have any pending felony criminal charges.

The Government shall not release any detainee whose most recent COVID-19 test

1   was positive, who is suspected of being COVID-19 positive, or is in isolation or

2   quarantine housing, until that detainee tests negative on a subsequent test and is

3   symptom free.  Further, if a detainee is symptomatic of COVID-19 but tests negative,

4   that detainee shall not be released until obtaining a second negative test.  All subsequent

5   COVID-19 tests shall be administered within a 7 day period.

6          Moreover, the Government shall not exclude any detainee from being released

7   because that detainee previously contracted, and has since recovered from, COVID-19.

8   The Court is unaware of any scientific evidence that supports a conclusion that people

9   who have recovered from COVID-19 have absolute immunity to a re-infection.  If the

10  Government, indeed, has  scientific evidence in support of COVID-19 immunity, it

11  should provide that evidence to the Court for its consideration.

12         The Court will consider individualized requests by the Government to exclude

13  particular class members from the above release sequence.  If the Government desires

14  to keep a class member detained, the parties shall follow the Court's procedures for bail

15  applications.  Namely, each release exclusion application shall be filed as a "joint

16  stipulation" following the general format set forth in Local Rules 37-2.1 and 37-2.2 for

17  discovery stipulations, but subject to the specific rules set forth in this order.  The

18  position papers of both the Government and Class Counsel, along with any relevant

19  declarations and exhibits, shall be compiled into a single document for each class

20  member as follows:

21         1.   Each exclusion bail application shall be for a single class member, and

22              shall be filed as a separate docket number.

23         2.   The Government shall transmit to Class Counsel, via email, its briefs in

24              support of each exclusion application, along with all of its declarations and

25              exhibits to be offered in support of each respective application.

26         3.   After the Government has transmitted its portion of each exclusion

27              application, the parties shall meet and confer to endeavor to reach an

28              agreement as to whether the class member should be excluded from

1    release.  If an agreement is reached, the application shall be captioned as

2    an Unopposed Exclusion Application and filed with the Court.

3    4.    If an agreement is not reached, Class Counsel shall have up to 5 business

4    days, from the receipt of each exclusion application, to transmit back to

5    the Government, via email, their opposition brief, along with all of their

6    declarations and exhibits, for each exclusion application.

7    5.    The Government shall, then, draft a reply brief, if any, in response to each

8    opposition brief within 2 business days of receiving each opposition brief.

9    6.    Each bail application shall be filed within 2 business days of the

10    Government's receipt of each opposition brief.

11    7.    The Government's opening briefs and Class Counsel's opposition briefs

12    shall not exceed 5 pages each.  The Government's reply briefs shall not

13    exceed 2 pages each.  The Court will grant exceptions to these page limits

14    only for extraordinary circumstances.

15    8.    If the Court determines that additional briefing is necessary, it will issue

16    an order requesting such briefing.

17    Based on the number of release exclusion applications the Government files, the

18    Court may order the Government to file a daily summary spreadsheet.  However, at this

19    time, a daily spreadsheet need not be filed.

20    This Population Reduction Order does not prevent any class member from

21    seeking bail pursuant to the bail application process previously ordered by the Court.

22    This Population Reduction Order is a supplement to the Modified Preliminary

23    Injunction.    As recognized by the Ninth Circuit in its order dismissing the

24    Government's appeal of the bail application process order, the relief provided by the

25    class-wide preliminary injunction is different from the individualized relief granted by

26    way of the bail orders. *See Roman v. Wolf,* __ F. App'x ___, 2020 WL 6043833, *1

27    (9th Cir. 2020).  However, to reserve resources, the Court urges Class Counsel to not

28    seek bail for any class member likely to be released or deported pursuant to this

1  Population Reduction Order.

2      The Government shall not arrest or re-detain any released class member without

3  first obtaining a prior order from this Court.

4      Adelanto shall continue to not accept new or transfer detainees, pending further

5  order of the Court.

6      The Government's Daily Housing and COVID-19 Status Report, as required by

7  the Court's order of October 9, 2020, shall, also, include a daily count of Adelanto's

8  total detainee population and a status report of the number of class members released

9  or deported pursuant to this Adelanto Population Reduction Order.

10

11  **Isolation, Quarantine, and Testing**

12      In their brief, Petitioners-Plaintiffs raised concerns regarding Adelanto's isolation

13  and quarantine protocols, as well as Adelanto's use of rapid COVID-19 testing, such

14  as the Abbott ID Now, versus the use of laboratory-based polymerase chain reaction

15  ["PCR"] testing.

16      As to the isolation and quarantine of class members, Adelanto shall house all

17  detainees who are confirmed COVID-19 positive in housing units containing only

18  detainees who have, also, been confirmed COVID-19 positive.  Detainees who are

19  suspected of being COVID-19 positive, but have not received a positive test result, shall

20  be isolated from all other detainees; they shall not be housed in a housing unit

21  containing any detainees who have been confirmed positive or confirmed negative for

22  COVID-19.  If space permits, Adelanto shall isolate, in single occupancy cells, all

23  detainees who have tested positive for COVID-19, and all detainees who are suspected

24  to be positive for COVID-19 and are awaiting test results.  Detainees who are not

25  suspected of being COVID-19 positive or who have tested negative for COVID-19 shall

26  not be housed in a housing unit with any detainees who are, or suspected to be, positive

27  for COVID-19.  Either party may file a motion regarding Adelanto's isolation practices,

28  and the Court shall consider such a motion on an expedited basis.

1    Petitioners-Plaintiffs take issue with Adelanto's heavy use of PCR testing rather

2    than rapid COVID-19 testing, despite the fact that Adelanto now possesses an Abbott

3    ID Now rapid test machine.  The rapid tests provide less accurate but more timely

4    results, in as few as 15 minutes, whereas the laboratory-based PCR tests provide more

5    accurate results but take significantly more time to obtain those results, up to 3 to 5

6    days.

7    However, it is clear to the Court that rapid and PCR tests each have their own

8    sets of benefits and detriments.  And the Court understands the benefits of faster, but

9    less accurate, testing during an active outbreak.

10    Accordingly, the Court will allow Adelanto's *medical staff* to weigh the benefits

11   and detriments of each type of testing in relation to the goals of the saturation testing

12   currently being conducted at Adelanto, and to choose the method of testing that the

13   *medical staff* deems to be the most appropriate and beneficial for the situation.

14   Nevertheless, the Court encourages the Government to conduct frequent testing of both

15   staff and detainees at Adelanto. Indeed, the most current order of the Court – issued

16   pursuant to a stipulation of the parties – requires weekly saturation COVID-19 testing

17   for a period of 4 weeks followed by a re-assessment of the need for further saturation

18   testing.  If the testing protocols have been selected by Adelanto's detention staff, as

19   opposed to its medical staff, the Court will expect to hear from the Petitioners-Plaintiffs

20   and/or the Government very quickly.

21

22   **Enforcement of the Modified Preliminary Injunction and Other Court Orders**

23    Respondents shall, by October 19, 2020, provide to all Government employees,

24   agents and contractors, including all employees, agents, and contractors of the GEO

25   Group, who staff, manage, or are otherwise responsible for Adelanto, a printed copy

26   of the Modified Preliminary Injunction along with a separate written notice that failure

27   to comply with the Modified Preliminary Injunction, including, but not limited to, the

28   mask wearing provision, will subject the violator, and his or her superiors, to being

1  held in contempt of this Court, which could result in the imposition of monetary fines

2  and/or incarceration.

3       While the Court agrees with the parties that it is difficult to enforce the provision

4  of the Modified Preliminary Injunction that requires detainees to wear masks, the Court

5  can, and will, enforce the Modified Preliminary Injunction's staff mask mandate,

6  especially given that the current COVID-19 outbreak was most likely caused by a staff

7  member who – hopefully, unknowingly – reported to work while infected with COVID-

8  19.

9       Similarly, if the Government, or an employee, agent, contractor or

10 representative, provides false, or inaccurate information in any report to the Court, the

11 Court will consider contempt proceedings.  Therefore, the Court urges the Government

12 to confirm and verify the accuracy of all information it reports to the Court.

13

14 IT IS SO ORDERED.

15

16 Date: January 11, 2021

17 _____

18                    Terry J. Hatter, Jr.
                Senior United States District Judge

19

20

21

22

23

24

25

26

27

28